**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-11066
_____

ESTATE OF WILLIE MAE SOWELL,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

December 13, 1999

Before KING, Chief Judge, and REYNALDO G. GARZA and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Estate of Willie Mae Sowell ("the Estate") appeals from a jury verdict upholding an IRS penalty for the Estate's failure to establish "reasonable cause" for its late payment of estate taxes. We affirm.

**I.**

Willie Mae Sowell passed away on December 14, 1991, at the age of 99. At the time of her

death, most of Sowell's substantial fortune was consolidated in two trusts.[1]

Federal law required the Estate to file a federal estate tax return and pay the tax due within nine months of Mrs. Sowell's death, i.e. before September 14, 1992. *See* 26 U.S.C. § 6075(a). While the estate owed $2,328,456 in federal estate taxes and $428,917 in Texas state estate taxes, it had only $1,000,961 in liquid assets to pay these debts because the majority of the estate was tied up in the two trusts. The Estate paid its entire state tax debt and paid the remainder, $572,044, to the IRS in partial satisfaction of its federal debt. The Estate also filed a Form 4768 request for a five-year extension to pay the balance, $1,756,412. The IRS denied the request, and the Estate did not appeal.

The Estate did not pay the full remainder of its tax liability until November 1996. Because the Estate had paid approximately $1.7 million of its tax liability over four years late, the IRS, pursuant to 26 U.S.C. § 6651, assessed a late payment penalty against the Estate which, including interest, amounted to $448,585.29. The estate paid the penalty under protest and filed an administrative claim for a refund, claiming that it was not liable for the penalty because its delinquency was "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2).[2] The IRS denied the claim, and the Estate brought suit in district court against the United States ("the

---

[1] One of the two trusts, the "Albert Sowell Trust" ("AST"), was established by Sowell's husband, Albert, before his death. Under the favorable tax treatment afforded "Qualified Terminal Interest Property" ("QTIP"), the AST was excludible from Mr. Sowell's estate, but was necessarily taxable as part of Mrs. Sowell's estate upon her death. *See* 26 U.S.C. § 2056(b)(7). In addition, a large part of Mrs. Sowell's fortune was held in the "Willie Mae Sowell Trust" ("WMST"), which had been established for Mrs. Sowell's benefit in 1984. The WMST was also part of Sowell's estate for federal estate tax purposes. *See id.* § 2036.

[2] An affirmative showing of "reasonable cause" excuses late filings from penalties. *See* 26 U.S.C. § 6651(a)(2). "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245, 105 S. Ct. 687, 689-90, 83 L. Ed. 2d 622, ___ (1985).

government"). A jury found that the Estate had not shown that its failure to timely pay the estate taxes was due to "reasonable cause," and the court entered judgment for the government.

On appeal, the Estate asserts that the district court erred (1) in not permitting its expert to answer hypothetical questions inquiring into "reasonable cause" and (2) in allowing the government to present evidence of events occurring after the date on which the Estate's taxes were due. We review these evidentiary rulings for abuse of discretion. *See Wilson v. Woods*, 163 F.3d 935, 936 (5th Cir. 1999) (expert testimony); *Caparotta v. Entergy Corp.*, 168 F.3d 754, 755-56 (5th Cir. 1999) (relevance and undue prejudice).

## II.

At trial, the Estate sought to ask its expert witness, Dean Charles O. Galvin, several hypothetical questions concerning what a reasonable fiduciary would do when confronted with facts identical to those in this case.[3] The government moved to forbid this line of questioning, arguing that it would convey to the jury a legal conclusion on the issue of "reasonable cause." The district court agreed with the government, allowing Dean Galvin to testify as to the definition and general standards

---

[3] The proposed hypothetical questions included the following:

Suppose that an estate has two creditors to pay, but not enough money to pay both. In your opinion, how should the estate determine which creditor to pay? Would your answer be different, if one of the creditors was the Internal Revenue Service, and the other creditor was the State of Texas?

Assume that there is a "QTIP" trust that is required to be included in an estate for purpose of computing federal estate taxes. The will of the decedent whose estate is at issue contains language directing that all taxes should be 'paid out of my estate without reimbursement from any person.' The attorney for the estate decides not to sue the QTIP trust for contribution. In your opinion, is this a reasonable decision for the estate to make?

of conduct of a fiduciary, but forbidding Galvin from testifying as to whether the fiduciaries in this case acted reasonably.

In *Askanse v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997), we upheld the exclusion of an attorney expert who sought to testify about whether the officers and directors in the case had breached their fiduciary duties. *See Askanse*, 130 F.3d at 672-73. We held that the proposed testimony offered a legal opinion and, as such, was inadmissible. *See id.* ("Whether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for [the expert] to tell the trier of fact what to decide.").

The principles espoused in *Askanse* are equally applicable here. Dean Galvin sought to testify about what a hypothetical estate executor, faced with the identical facts as the Estate in this case, would do if acting reasonably. Whether the Estate was "acting reasonably" was, for all practical purposes, the only issue for the jury in this case to decide. Accordingly, the district court did not abuse its discretion in excluding Dean Galvin's testimony as an inadmissible legal opinion on the issue of "reasonable cause." *Cf. Boyle*, 249 U.S. at 249 n.8, 105 S. Ct. at 692 n.8, 83 L. Ed. 2d at ___ ("A number of courts have indicated that 'reasonable cause' is a question of fact, to be determined only from the particular situation presented in each particular case. This view is not entirely correct. Whether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to 'constitute' reasonable cause is a question of law.") (citations omitted).

The Estate here essentially attempted to circumvent *Askanse* by asking its expert hypothetical questions with facts identical to those in the case at bar rather than simply asking its expert to espouse his opinion on the facts of the case. This line of questioning, however, would implicate the same

concerns present in *Askanse*, namely, that "if an expert were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position . . . confus[ing] the jury." *Askanse*, 130 F.3d at 673. Accordingly, the district court acted within its wide discretion in forbidding the Estate from asking Galvin these hypothetical questions, responses to which would constitute a legal opinion "tell[ing] the trier of fact what to decide." *Id.*

**III.**

Before the trial began, the Estate moved *in limine* to forbid the government from introducing evidence of events that occurred after the date the tax was due, arguing that such evidence was irrelevant to the question of whether the Estate had "reasonable cause" for not paying before that date. The district court denied the motion.

Treasury Regulations provide that:

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid on the due date.

26 § C.F.R. 301.6651-1. At trial, the Estate attempted to prove "reasonable cause" with evidence that it tried without success to raise cash by using funds from the WMST and the AST. The Estate argued that the AST's last-minute decision not to contribute to paying the tax debt eliminated that source as a possibility, and that it exercised reasonable business judgment in deciding not to liquidate the assets of the WMST.

The Estate argues that since "reasonable cause" and "willful neglect" are determined as of the date the taxes are due, any events subsequent to that date are irrelevant and unduly prejudicial.[4] We

_____

[4]     The Estate relies on *Industrial Indemnity v. Snyder*, 41 B.R. 882 (E.D. Wa. 1984). *Snyder*, however, is inapplicable here. In *Snyder*, a taxpayer without reasonable cause for not filing

disagree. The post-due date evidence was introduced by the government to rebut the Estate's argument that it used "ordinary care and prudence" in attempting to pay the tax before it was due.[5] For example, the fact that the Estate did not attempt to obtain a loan for the entire four-year period following the due date is certainly relevant to whether its failure to arrange for a loan before the due date was "reasonable." Further, the Estate's failure to appeal the IRS's denial of its request for an extension clearly affects whether the Estate's overall failure to pay on time was "reasonable." Such information is more than merely relevant))it is quite probative of "reasonableness", and outweighs any unduly prejudicial effect it may have had on the estate.

Under the Estate's rationale, evidence that an executor used estate funds to purchase a fleet of luxury cars and an island in the South Pacific after the date the taxes were due would be inadmissible to prove that the executor's failure to pay the estate taxes on time was unreasonable. This is plainly wrong. Accordingly, the district court did not abuse its discretion in allowing introduction of the post-due date evidence as admissible to prove that the Estate was unreasonable in failing to pay its taxes on the due date.

**IV.**

---

on the date his taxes were due argued that the late penalty should stop accruing at the time he later, after the due date, had "reasonable cause." The court rejected that argument, asserting that if a taxpayer did not have "reasonable cause" on the date his taxes were due, later justifications would not stop penalties from accruing. *Id.* The court, however, did not assert that post-date events were irrelevant to whether the failure to pay by the due date was "reasonable"; rather, it merely asserted that post-date events did not stop the penalties from accruing.

[5] The government introduced evidence that the Estate did not sue the AST for its allegedly illegal failure to contribute to *pro rata* to the estate taxes, that the Estate did not consider borrowing money from the more-than-sufficient AST, that the Estate failed to appeal the IRS's denial of its request for an extension, and that the Estate took no action in an effort to pay the tax debt for four years.

Finding appellant's contentions to be without merit, we AFFIRM the judgment of the district court.