**VACATE and  AFFIRM; and Opinion Filed June 24, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00175-CV

**BERNARD PATRUSKY, Appellant**
**V.**
**KENNETH BLOOMBERG AND MARILYN BLOOMBERG, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-14821**

## MEMORANDUM OPINION
Before Justices Fillmore, Myers, and Evans
Opinion by Justice Fillmore

Bernard Patrusky sued Kenneth Bloomberg  and Kenneth's mother, Marilyn Bloomberg,[1] alleging he relied on Kenneth's and Marilyn's misrepresentations in deciding to loan money to Glen Oaks Logistics & Distribution, Ltd. (Glen Oaks) and he lost that money when Glen Oaks declared bankruptcy.  As relevant to this appeal, Marilyn filed a first amended no-evidence motion for summary judgment and Kenneth filed first and third no-evidence motions for summary judgment and a second traditional motion for summary judgment.[2]  The trial court granted summary judgment in favor of both Marilyn and Kenneth and ordered that Patrusky take nothing on his claims.

---

[1] Because appellees, as well as Stanley Bloomberg, have the same surname, we will refer to them by their first names in this opinion.

[2] The record does not indicate any ruling by the trial court on Kenneth's first traditional motion for summary judgment or second no-evidence motion for summary judgment.

In his first three issues, Patrusky contends the trial court erred by overruling his objections to Kenneth's summary judgment evidence and by granting Kenneth's third no-evidence and second traditional motions for summary judgment. In his fourth issue, Patrusky argues the trial court erred by granting Marilyn's first amended no-evidence motion for summary judgment. We vacate the trial court's judgment to the extent it granted summary judgment on Patrusky's negligence claim against Kenneth and dismiss that claim for want of jurisdiction. In all other respects, we affirm the trial court's judgment.

**Background**

Glen Oaks Industries (Industries) manufactured men's slacks. Industries was owned primarily by Stanley Bloomberg, who was Marilyn's husband and Kenneth's father, and Milton Askinas, who was Marilyn's uncle. Beginning in the 1980's, Patrusky, who is both a lawyer and a certified public accountant, provided legal services to Industries. Kenneth began working for Industries in 1986.

According to Kenneth, an agreement between Stanley and Askinas required Industries to be liquidated or sold within two years of either man's death. Stanley died in July 1997, and Patrusky offered to purchase Industries. On January 28, 1999, three trusts, The Glen Oaks Irrevocable Trust No. 1, The Glen Oaks Irrevocable Trust No. 2, and The Glen Oaks Irrevocable Trust No. 3 (collectively, the Trusts), purchased all the stock of Industries. Patrusky's law partner was the trustee of the Trusts. Kenneth was president of Industries following the sale, and personally borrowed money from Marilyn in 2001 to purchase a portion of the stock of Industries held by the Trusts. By 2003, Industries had declared bankruptcy.

Prior to Industries filing for bankruptcy, Kenneth had approached Patrusky about converting the company to a 3PL, or third-party logistics, business. A 3PL business handles distribution of goods for a customer that does not have a warehouse of its own. Glen Oaks, the

3PL company that was formed after Industries filed for bankruptcy, purchased certain assets from the creditors' committee in Industries' bankruptcy and began operating in 2003. Kenneth was Glen Oaks' president. Over the next several years, both Kenneth and Patrusky periodically loaned funds to Glen Oaks. Glen Oaks repaid some of the loans, but was not profitable overall.

Between April and October of 2007, Glen Oaks began installing additional equipment to accommodate its customer's needs. Through three loans in August, September, and October of 2007, Patrusky loaned Glen Oaks $500,000 to pay for the improvements. At the end of 2007, Glen Oaks had outstanding loans in the amounts of $487,299.38 owing to Kenneth and $509,250.00 owing to Patrusky. In January 2008, Glen Oaks hired Gary Ruchlin as chief operating officer. Ruchlin recommended a number of improvements to Glen Oaks' operations. In January and February of 2008, Patrusky loaned Glen Oaks an additional $350,000 to complete the improvements recommended by Ruchlin. He loaned Glen Oaks an additional $47,000 in March and April of 2008. In April 2008, Marilyn made four loans to Glen Oaks totaling $148,776.30. In May and June, Glen Oaks repaid $47,000 to Patrusky. As of June 10, 2008, Glen Oaks had outstanding loans of $676,650.18 owing to Kenneth and Marilyn, combined, and $859,250.00 owing to Patrusky.

Glen Oaks declared bankruptcy in January 2009. Patrusky sued both Marilyn and Kenneth, seeking to recover the money he loaned to Glen Oaks. He asserted claims for fraud by nondisclosure, common law fraud, and fraud by misrepresentation/statutory fraud against Marilyn and Kenneth. Patrusky asserted additional claims for negligence, breach of fiduciary duty, and negligent misrepresentation[3] against Kenneth. Patrusky's claims were based on two general categories of conduct. First, Patrusky alleged he was damaged by actions taken by

---

[3] Patrusky captioned this cause of action as "Negligent and/or Intentional Misrepresentation," but substantively pleaded only a negligent misrepresentation claim and, in both his response to Kenneth's third no-evidence motion for summary judgment and in his brief on appeal, addressed only a negligent misrepresentation claim.

Kenneth, while he was the president of Glen Oaks, and Kenneth's failure to disclose those actions. Second, Patrusky alleged he was damaged by Kenneth's and Marilyn's failure to disclose information relating to Kenneth's mental health, financial condition, and marital status and by representing that a trust would fund Kenneth's loans to Glen Oaks.

Both Marilyn and Kenneth filed no-evidence motions for summary judgment. The trial court granted Marilyn's first amended no-evidence motion for summary judgment on all claims and granted Kenneth's first no-evidence motion for summary judgment on the fraud by misrepresentation/statutory fraud claim.[4] Approximately nineteen months later, Kenneth filed a second traditional motion for summary judgment and a third no-evidence motion for summary judgment. The trial court granted both motions and, following Kenneth's nonsuit of his counterclaims against Patrusky, signed a final judgment ordering that Patrusky take nothing on his claims

## Standing

In both his second traditional motion for summary judgment and his third no-evidence motion for summary judgment, Kenneth asserted Patrusky was not a shareholder of Glen Oaks and did not have standing to bring his claims.[5] Patrusky produced no evidence he was a shareholder of Glen Oaks and admitted at the hearing on Kenneth's second traditional motion for summary judgment and third no-evidence motion for summary judgment that he was not a shareholder of Glen Oaks.

Standing is a component of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993); *Hodges v. Rajpal*, 459 S.W.3d 237, 248 (Tex.

---

[4] In his brief, Patrusky does not challenge the trial court's grant of summary judgment to Marilyn and Kenneth on the fraud by misrepresentation/statutory fraud claim.

[5] Patrusky argues Kenneth failed to plead lack of standing as an affirmative defense. However, standing is not an affirmative defense and cannot be waived. *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 2452980, at *11–12 (Tex. App.—Dallas May 22, 2015, no pet. h.).

App.—Dallas 2015, no pet.). "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). Whether a party has standing to pursue a cause of action is a question of law subject to de novo review. *Id.* at 149–50.

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Sneed v. Webre*, No. 12-0045, 2015 WL 3451653, at *7 (Tex. May 29, 2015) (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005)). The standing inquiry involves an examination of whether (1) the plaintiff was personally injured—the plaintiff is required to plead facts demonstrating that he (rather than a third party) suffered the injury—and the injury was concrete and particularized, actual or imminent, and not hypothetical; (2) the plaintiff's alleged injury is fairly traceable to the defendant's conduct; and (3) the plaintiff's alleged injury is likely to be redressed by each form of requested relief. *Heckman*, 369 S.W.3d at 155; *see also Hodges*, 459 S.W.3d at 248. A plaintiff has standing when he is personally aggrieved by the alleged wrong. *Austin Nursing Ctr.*, 171 S.W.3d at 848 (quoting *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)); *Hodges*, 459 S.W.3d at 248.

Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Hall v. Douglas*, 380 S.W.3d 860, 873 (Tex. App.—Dallas 2012, no pet.); *see also Asshauer v. Wells Fargo Foothill*, 263 S.W.3d 468, 471 (Tex. App.—Dallas 2008, pet. denied). Only the person whose primary legal right has been breached may seek redress for an injury. *Hall*, 380 S.W.3d at 873; *Asshauer*, 263 S.W.3d at 471. When standing is challenged, the burden of proof is on the person whose interest is challenged to present sufficient evidence to prove that he is an interested person. *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 2452980, at *12 (Tex. App.—Dallas May 22, 2015, no pet. h.).

In connection with Patrusky's claims against Kenneth for breach of fiduciary duty and negligent misrepresentation and against Kenneth and Marilyn for fraud by nondisclosure and common law fraud, he alleged he relied on certain acts or omissions by Kenneth and Marilyn in deciding to loan money to Glen Oaks and he lost that money when Glen Oaks declared bankruptcy. These claims assert that Patrusky was personally aggrieved by Kenneth's and Marilyn's conduct and seeks damages he claims to have suffered due to that conduct. Accordingly, Patrusky has standing to assert these claims.

However, in connection with his negligence claim against Kenneth, Patrusky alleged that Kenneth, acting as Glen Oaks' president, was "negligent in the course of the performance of his obligations and duties" by failing to properly disclose material transactions, making secret side deals related to the business of Glen Oaks, making material contractual commitments without proper authority, failing to disclose Glen Oaks' true financial position, making false affirmative statements regarding Glen Oaks' financial condition, and violating "various state statutes, customs and practices as an officer of a corporation in the State of Texas." Patrusky alleged a "reasonably prudent officer of a corporation conducting business in the State of Texas exercising ordinary care would have adequately disclosed the material business transactions of Glen Oaks, for the benefit of the shareholders of Glen Oaks." Patrusky further alleged that Kenneth chose to breach the "duties imposed by state law upon officers of a corporation."

A corporate officer owes a duty to the corporation to exercise due care in the management of the corporation's affairs, and the officer may be held liable for any damages the corporation suffers as a result of his negligence. *See Fagan v La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ). If the officer negligently breaches that duty, the corporation is the proper party to bring the claim. *Cates v. Sparkman*, 73 Tex. 619, 621, 11 S.W. 846, 848 (Tex. 1889), *superseded by statute on other*

*grounds as stated in Sneed*, 2015 WL 3451653, at \*8–9; *Fagan*, 494 S.W.2d at 628 ("In ordinary circumstances where an officer or director negligently mismanages corporate business to its injury or takes to himself that which belongs to, or in fairness and equity should be acquired by, the corporation, a cause of action in behalf of the corporation arises."). A creditor may not directly prosecute such a claim. *Fagan*, 494 S.W.2d at 628. Although Kenneth's alleged acts or omissions described in Patrusky's negligence claim, if proven, could have been breaches of Kenneth's duty to Glen Oaks, Patrusky, as a creditor, has no standing to assert those claims.

A party's lack of standing deprives the court of subject-matter jurisdiction and renders any trial court action void. *Fitness Evolution, L.P.*, 2015 WL 2452980, at \*13 (citing *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). The court must dismiss claims of a plaintiff who lacks standing, *Heckman*, 369 S.W.3d at 153, and may not render judgment that the plaintiff take nothing, as it would if the plaintiff's claim failed on the merits. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 307 (Tex. 2008); *see also Fitness Evolution, L.P.*, 2015 WL 2452980, at \*13.

Because Patrusky lacked standing to assert his negligence claim against Kenneth, we conclude the trial court erred by rendering judgment that Patrusky take nothing on that claim. Accordingly, we vacate the trial court's judgment as to Patrusky's negligence claim and dismiss that claim for lack of jurisdiction. *See Fitness Evolution, L.P.*, 2015 WL 2452980, at \*17.

### No-Evidence Summary Judgment

In his second and fourth issues, Patrusky contends the trial court erred by granting Kenneth's third no-evidence motion for summary judgment and Marilyn's first amended no-evidence motion for summary judgment. We review a trial court's decision to grant summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a

directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of his claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i). In reviewing a no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Gish*, 286 S.W.3d at 310. We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id.*

*Marilyn's First Amended No-Evidence Motion for Summary Judgment*

In his fourth issue, Patrusky asserts the trial court erred by granting Marilyn's first amended no-evidence motion for summary judgment on his fraud by nondisclosure and common law fraud claims. In her motion, Marilyn asserted Patrusky had no evidence of any element of these claims.

1.      Summary Judgment Evidence

In his response to Marilyn's no-evidence motion for summary judgment, Patrusky, relying on his own affidavit, alleged Marilyn (1) represented to Patrusky that either she or a trust of which Kenneth was a beneficiary would fund Kenneth's contributions to Glen Oaks, and (2) failed to disclose certain facts that would have been material to Patrusky's decision to continue to loan money to Glen Oaks. Patrusky cited the trial court to paragraph 11 of his affidavit in which he attested:

> During a face to face meeting with [Patrusky] in his New York office, [Marilyn] failed to state that:
>
> a.      [Kenneth], her son, had a history of mental illness and had been taking medications for [Kenneth's] psychiatric problems;
>
> b.      [Kenneth]'s psychiatric issues extended continuously since high school;

–8–

c. [Kenneth] was a spendthrift, having already "borrowed" substantial sums from his mother; and

d. [Marilyn] had been to Dallas on prior occasions to help patch up her son's marriage due to his money problems.

The summary judgment evidence established this meeting occurred in April 2008.

Patrusky's affidavit contains no information describing how he had knowledge of these "facts" that Marilyn allegedly failed to disclose and, standing alone, is conclusory. *See S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 855–56 (Tex. App.—Dallas 2011, no pet.) (conclusory statement is one that does not provide the underlying facts to support the conclusion). Affidavits consisting only of conclusions are insufficient to raise an issue of fact to defeat a motion for summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.); *see also Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 839 (Tex. 2010) (noting in summary judgment case that "conclusory statements cannot support a judgment even when no objection was made to the statements at trial" (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). We, therefore, look to whether any other summary judgment evidence relied upon by Patrusky supports the "facts" that Marilyn allegedly failed to disclose.

In his response to Marilyn's first amended no-evidence motion for summary judgment and in his brief on appeal, Patrusky relied upon a single question and answer in the transcript of Kenneth's deposition to support the claim Kenneth had a mental illness:

Q. And did you ever tell [Patrusky] that you were suffering from depression?

A. No.

Both in the trial court and on appeal, Patrusky failed to cite the very next two questions to Kenneth:

Q. And have you ever been?

A.      No.

Q.      Ever been diagnosed as suffering from depression?

A.      I have not been diagnosed as suffering from depression.

Accordingly, the one question and answer relied upon by Patrusky does not support the "fact" that Kenneth suffered from a mental illness.

As to whether Kenneth has suffered from a mental illness since high school, Patrusky, evidently relying on a question to Kenneth about any mental health professionals Kenneth had seen since 2001, asserted, both in the trial court and in this Court, that Kenneth admitted he had been under the care of a mental health professional since 2001. However, Kenneth identified only a psychiatrist he began seeing in 2004 for difficulty sleeping and a psychologist he began seeing in 2009. He was prescribed medication for the sleeping problem as well as for "concentration and focus." There is no testimony by Kenneth that he been seeing a mental health professional since 2001, much less that he had "psychiatric issues extend[ing] continuously since high school."

Patrusky also relied on excerpts from Marilyn's deposition in an attempt to establish she knew that Kenneth had mental health issues. However, Marilyn testified she knew only that Kenneth had been seeing a psychiatrist in the last five to seven years because he was under stress and having trouble sleeping. She denied Kenneth had mental health issues in high school or college or had seen a psychiatrist during that time frame. We conclude Patrusky directed the trial court to no evidence that Kenneth "had a history of mental illness" and Kenneth's "psychiatric issues extended continuously since high school."

Patrusky next alleged that Marilyn failed to disclose she had been to Dallas to "patch up her son's marriage due to money problems." The only evidence relied upon by Patrusky to support his assertion that Marilyn came to Dallas to address problems in Kenneth's marriage is

–10–

his own affidavit. The affidavit does not indicate how Patrusky was aware of this "fact," and Patrusky cited the trial court to no summary judgment evidence to support this fact.

Patrusky complains Marilyn failed to disclose the "facts" that Kenneth had mental health issues, had those issues for many years, and had difficulties in his marriage, but failed to provide any summary judgment evidence in support of those "facts." Indeed, we question whether Patrusky's representation of the summary judgment evidence to the trial court and to this Court was candid. Although a party responding to a no-evidence motion for summary judgment is required only to produce evidence that raises a genuine issue of material fact on each challenged element of his claim, the party cannot do so by producing a conclusory affidavit and supporting that affidavit by citing to portions of the summary judgment evidence in a misleading fashion.

2.     Analysis

To establish common law fraud, a plaintiff must prove (1) a material misrepresentation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent the other party should act upon it, (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury. *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied). Fraud by nondisclosure is considered a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1987). To establish fraud by nondisclosure, a plaintiff must prove (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when she had a duty to speak, (6) by failing to disclose

–11–

the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge. *Blankinship*, 399 S.W.3d at 308.

We conclude there is no evidence that Kenneth had mental health issues continuously since high school or that Marilyn came to Dallas to "patch up" Kenneth's marriage due to financial issues. Accordingly, Marilyn had no duty to disclose these "facts" to Patrusky. Further, even assuming Marilyn had a duty to disclose to Patrusky that Kenneth was taking medication to assist him with sleeping and with concentration and focus, there is no evidence that Patrusky would have found this fact alone material to his decision-making process. *See id*.

The final fact that Patrusky asserted Marilyn failed to disclose was that Kenneth was a "spendthrift" who had borrowed a substantial amount of money from her. Patrusky cited the trial court to portions of Kenneth's and Marilyn's deposition testimony to support the proposition that Kenneth had borrowed a substantial amount of money from Marilyn. However, by April 2008, when Patrusky claimed Marilyn failed to disclose this information, Patrusky had already loaned the money to Glen Oaks that he attempts to recover in this case. Therefore, he could not have relied upon Marilyn's failure to disclose any information about Kenneth's financial condition in deciding to loan those funds to Glen Oaks.

Patrusky finally complains Marilyn made affirmative misrepresentations to him on which he relied in deciding to loan money to Glen Oaks. In the affidavit attached to his response to Marilyn's no-evidence motion for summary judgment, Patrusky stated that, during the "face to face meeting" in 2008, Marilyn "gave me the impression that she would fund [Kenneth's] contributions individually or from a purported trust in favor of' Kenneth." Patrusky loaned to Glen Oaks the money he seeks to recover in this appeal prior to the April 2008 meeting.

Accordingly, he could not have relied on Marilyn's purported representation in deciding to loan that money to Glen Oaks.

Patrusky failed to produce summary judgment evidence that raised an issue of material fact on every challenged element of his claims against Marilyn based on fraud by nondisclosure and common law fraud. Therefore, the trial court did not err by granting summary judgment in favor of Marilyn. We resolve Patrusky's fourth issue against him.

*Kenneth's Third No-Evidence Motion for Summary Judgment*

In his second issue, Patrusky asserts the trial court erred by granting Kenneth's third no-evidence motion for summary judgment. In his third no-evidence motion for summary judgment, Kenneth contended Patrusky had no evidence of any element of the five live causes of action asserted against Kenneth. We have already concluded Patrusky did not have standing to assert the negligence claim. Accordingly, we need address only Patrusky's claims for breach of fiduciary duty, negligent misrepresentation, fraud by nondisclosure, and common law fraud.

1.    Breach of Fiduciary Duty

The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached the fiduciary duty to the plaintiff, and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). "'Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam).

In his response to Kenneth's third no-evidence motion for summary judgment, Patrusky asserted he had both a formal and an informal fiduciary relationship with Kenneth. Patrusky first appears to argue that, as a corporate officer, Kenneth owed him a formal fiduciary duty. A

corporate officer owes a fiduciary duty to the corporation he serves and may owe fiduciary duties to the shareholders of the corporation if there is some contract or special relationship between them in addition to the corporate relationship. *Mary E. Bivens Found. v. Highland Capital Mgmt L.P.*, 451 S.W.3d 104, 113 (Tex. App.—Dallas 2014, no pet.). However, Patrusky was not a shareholder of Glen Oaks; rather, he was a lender. The relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship. *Wil-Roye Inv. Co. II v. Wash. Mut. Bank, FA*, 142 S.W.3d 393, 410 (Tex. App.—El Paso 2004, no pet.); *see also Thigpen v. Locke*, 363 S.W.2d 247, 249, 253 (Tex. 1962) (debtor-creditor relationship involving personal loans from a bank officer did not create fiduciary relationship). When a special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities. *Wil-Roye Inv. Co. II*, 142 S.W.3d at 410. In arguing a formal fiduciary relationship existed with Kenneth, Patrusky did not rely on a special relationship existing between him, as a lender, and Glen Oaks, as a borrower, and did not direct the trial court to any evidence that would have established such a relationship between him and Glen Oaks, much less between him and Kenneth. *See id.* Accordingly, we conclude there was no formal fiduciary relationship between Patrusky and Kenneth.[6]

Patrusky also argued an informal fiduciary relationship existed between him and Kenneth because of his long working relationship with Kenneth. An informal duty may arise from "a moral, social, domestic or purely personal relationship of trust and confidence.'" *Meyer*, 167 S.W.3d at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276,

---

[6] In asserting there was a formal fiduciary relationship, Patrusky relies heavily on Kenneth's deposition testimony that he owed Patrusky a fiduciary duty and a duty of full and fair disclosure and Kenneth's counterclaim in which he stated there was a fiduciary relationship between the parties. Because the existence of a formal fiduciary relationship is a question of law, Kenneth's testimony that he owed Patrusky a fiduciary duty does not impact our analysis. Further, Kenneth pleaded in his counterclaim that Patrusky owed a fiduciary duty to Kenneth, not that Kenneth owed a fiduciary duty to Patrusky.

–14–

287 (Tex. 1998)).  However, such a relationship is not created lightly and "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp.*, 959 S.W.2d at 176–77.  "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."  *Meyer*, 167 S.W.3d at 331 (quoting *Associated Indem, Corp.*, 964 S.W.2d at 288).

Patrusky's claims that he trusted Kenneth did not transform their business relationship into a fiduciary relationship.  *See Meyer*, 167 S.W.3d at 331.  Further, Patrusky provided the trial court with no summary judgment evidence of a preexisting relationship with Kenneth beyond their business relationship that would support a finding that Kenneth owed Patrusky a fiduciary duty based on an informal fiduciary relationship.  *See Berry v. First Nat'l Bank of Olney*, 894 S.W.2d 558, 560 (Tex. App.—Fort Worth 1995, no writ) (to avoid summary judgment on breach of fiduciary duty claim, plaintiff is required to allege in his petition or response to motion for summary judgment specific facts showing special or fiduciary duty to create material issue of fact on whether fiduciary or special relationship existed).

Because there was neither a formal nor an informal fiduciary relationship between Kenneth and Patrusky, the trial court did not err by granting Kenneth's third no-evidence motion for summary judgment on Patrusky's breach-of-fiduciary duty claim.

2.      Negligent Misrepresentation

The elements of negligent misrepresentation are: (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (2) the defendant supplies false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the

representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.—Dallas 2013, no pet.). To support a claim for negligent misrepresentation, the false information provided must concern an "existing fact" rather than a promise of future conduct. *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 237–38 (Tex. App.—Dallas 2012, no pet.); *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.).

Patrusky's claim for negligent misrepresentation against Kenneth was based on facts about Glen Oaks' financial condition that Kenneth, "as an officer of Glen Oak," "in connection with his position as an officer of Glen Oaks," and "in the course of Glen Oaks' business," failed to disclose to Patrusky. In his response to Kenneth's third no-evidence motion for summary judgment, Patrusky specifically argued Kenneth falsely represented his ability to provide needed capital contributions to Glen Oaks and Kenneth failed to disclose credits to customers, billing write offs, and an "off the books" contract.

We turn first to Patrusky's complaint that Kenneth falsely represented his ability to provide needed capital contributions to Glen Oaks. Patrusky specifically argued that Kenneth promised to make contributions to fund Glen Oaks that were equal to Patrusky's contributions and represented he had the resources available to make the contributions. A promise of future conduct is not a misstatement of existing fact and will not support a negligent misrepresentation claim. *Scherer*, 253 S.W.3d at 781; *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (representations by defendant that he would provide all equipment needed to start recycling plant and would pay plaintiff an annual salary while attempting to start plant were "insufficient to establish negligent misrepresentation as a matter of law because they do not constitute a representation of existing fact"). Assuming Kenneth promised, at some point, to make future contributions to Glen Oaks equal to Patrusky's

contributions, that promise of future conduct will not support a negligent misrepresentation claim.

We next consider Patrusky's complaint that Kenneth failed to disclose certain actions that he took in his capacity as a corporate officer in the course of Glen Oaks' business. In his response to Kenneth's third no-evidence motion for summary judgment Patrusky specifically complained that Kenneth failed to disclose "off the books" credits, billing write offs, and an "off the books" contract. Because it is dispositive of this claim, we will address only whether Patrusky justifiably relied on any misrepresentation by Kenneth. *See* TEX. R. APP. P. 47.1.

As indicated previously, in order to establish a negligent misrepresentation claim, the plaintiff must prove, *inter alia*, actual and justifiable reliance on a misrepresentation of an existing fact. *Miller Global Prop., LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 347–48 (Tex. App.—Dallas 2013, pet. denied) (in negligent misrepresentation claim, plaintiff must show both actual and justifiable reliance on alleged misrepresentation); *AKB Hendrick, LP*, 380 S.W.3d at 237–38. As relevant to Kenneth's conduct while acting as president of Glen Oaks, Patrusky pointed to no affirmative misrepresentation of an existing fact that Kenneth made to Patrusky about any of the complained-about conduct. *See Spethmann v. Anderson*, 171 S.W.3d 680, 688, 690–91 (Tex. App.—Dallas 2005, no pet.) (reversing jury's verdict based on negligent misrepresentation because there was no evidence defendant made an affirmative misrepresentation or supplied false information to plaintiff). Rather, Patrusky asserts Kenneth failed to disclose the complained-about conduct.

In Patrusky's response to Kenneth's third no-evidence motion for summary judgment, the only statement about reliance attributable to Kenneth's failure to disclose certain actions he took as Glen Oaks' president was that Patrusky "relied upon the financial statements of [Glen Oaks]," not knowing there were "off the books" liabilities. However, Patrusky cited to no summary

judgment evidence to support that statement. Further, Patrusky did not state in his affidavit that he relied on the financial statements of Glen Oaks in deciding to loan money to Glen Oaks in 2007 and 2008.[7] Therefore, Patrusky failed to produce summary judgment evidence that raised an issue of material fact on each element of his claim for negligent misrepresentation based on Kenneth's failure to disclose certain actions he took as president of Glen Oaks.

We conclude the trial court did not err by granting Kenneth's no-evidence motion for summary judgment on Patrusky's negligent misrepresentation claim.

### 3.    Fraud by Nondisclosure and Common Law Fraud

For both of these causes of action,[8] Patrusky, relying on his own affidavit, asserted in his response to Kenneth's third no-evidence motion for summary judgment that Kenneth failed to disclose his long history of mental illness, spendthrift issues, and Marilyn's attempts to address Kenneth's marital problems arising from financial difficulties. He also contended Kenneth failed to disclose information regarding off-the-books credits given to Glen Oaks' clients, the failure to have written contracts with certain clients, and an off-the-books contractual hiring of a consultant. With regard to the common law fraud cause of action, Patrusky also asserted that Kenneth misrepresented he had assets available to make contributions to Glen Oaks in the same amount as Patrusky's contributions.

---

[7] As to Kenneth, the only statements in Patrusky's affidavit that address reliance are paragraphs 13, 14, and 18, in which he states:

- Had . . . [Kenneth] disclosed [his] mental problems to me, I would have liquidated Glen Oaks at the outset and never advanced any additional funds to Glen Oaks in reliance upon false representations of [Kenneth];

- Had . . . [Kenneth] disclosed [his] money problems to me, I would have liquidated Glen Oaks at the outset and never advanced any additional funds to Glen Oaks in reliance upon false representations of [Kenneth]. At that time, the liquidation value was approximately $3.0 MM to $3.5 MM.

- I relied upon the statements and omissions of [Kenneth] when deciding not to liquidate Glen Oaks and making additional financial contributions to fund the cash flow needs of Glen Oaks.

All of these statements about reliance were made immediately after Patrusky addressed Kenneth's failure to disclose his alleged mental health and financial issues and relate to Patrusky's decision, at the time Industries was in bankruptcy, to loan funds to allow Glen Oaks to begin operating as a 3PL company. Patrusky then discussed in paragraph 19 of the affidavit the "material financial misrepresentations and omissions and false statements in connection with [Kenneth's] management of Glen Oaks." Although Patrusky listed the alleged financial misrepresentations and omissions, he did not state he relied upon them in deciding to provide additional loans to Glen Oaks in 2007 and 2008.

[8] The elements of these causes of action are set out above in our discussion of Marilyn's first amended no-evidence motion for summary judgment.

–18–

As set out above in our discussion of Marilyn's first amended no-evidence motion for summary judgment, Patrusky's affidavit stating he was not informed of Kenneth's mental health issues or marriage problems is conclusory and not supported by any evidence relied on by Patrusky. Because there is no evidence of any "facts" that existed, there can be no fraud by Kenneth in failing to disclose these facts.

We next turn to Patrusky's complaint that Kenneth failed to disclose either that he had borrowed money from his mother or taken certain actions while he was president of Glen Oaks. For fraud by nondisclosure to be actionable, there must be, *inter alia*, a duty to disclose. *Ins. Co. v. N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *White v. Pei*, 452 S.W.3d 527, 537 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Whether such a duty exists is a question of law. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001); *White*, 452 S.W.3d at 537. A duty to disclose may arise in four situations: (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; and (4) where one makes a partial disclosure and conveys a false impression. *White*, 452 S.W.3d at 537–38.

As relevant here, Patrusky specifically argued in his response to Kenneth's third no-evidence motion for summary judgment that Kenneth "never disclosed" information relating to "3 or more side deals" at Glen Oaks, off-the-books credits, the failure to have written contracts with certain clients, and an "off the books" contract with a consultant. Patrusky asserted Kenneth owed a duty to disclose this information because he created a false impression through making a partial disclosure and through voluntarily disclosed partial information:

> in his meeting with Patrusky in early 2008 with regards to additional capital contributions for [Glen Oaks], disclose information with regards to trusts and assets that would enable [Kenneth] to make all payments required in connection with the contributions discussed for [Glen Oaks.] [At] [t]his meeting in early

–19–

2008, Patrusky discussed concerns he had with [Kenneth] and whether the required capital contributions were to be made. Nonetheless, despite the nature of this meeting, [Kenneth] did not disclose the above information. [Kenneth] also had a duty to disclose the unreported liability he incurred on behalf of [Glen Oaks].

(Citations to summary judgment evidence omitted).

The only partial or voluntary disclosure identified by Patrusky to the trial court that purportedly created a duty requiring Kenneth to disclose the complained-about information was a representation by Kenneth in April 2008 that he had sufficient assets to fund contributions to Glen Oaks. This disclosure came after Patrusky had loaned the money to Glen Oaks that he seeks to recover in this case. Accordingly, even assuming this partial disclosure created a duty for Kenneth to disclose other information and that Kenneth breached that duty by failing to disclose the information, there is no summary judgment evidence that Patrusky relied on that failure to disclose in deciding to lend money to Glen Oaks in 2007 and January and February of 2008.

Patrusky finally argues Kenneth falsely represented during the April 2008 meeting that he had trusts and assets that would enable him to make all payments required in connection with the needed capital contributions to Glen Oaks. However, by April 2008, Patrusky had already loaned to Glen Oaks the money he seeks to recover in this case. Therefore, Patrusky could not have relied upon any representation by Kenneth in April 2008, that would have required disclosure of the complained-about information.[9] We conclude Patrusky failed to raise a material issue of fact as to each element of his fraud by nondisclosure or common law fraud claims against Kenneth.

---

[9] Further, the record is clear that, before the April 2008 meeting, Patrusky was aware of all the allegedly undisclosed conduct of Kenneth while Kenneth was acting as Glen Oaks' president.

Because Patrusky failed to produce summary judgment evidence to create a material issue of fact on each element of his claims against Kenneth for breach of fiduciary duty, negligent misrepresentation, fraud by nondisclosure, and common law fraud, the trial court did not err by granting Kenneth's third no-evidence motion for summary judgment. We resolve Patrusky's second issue against him. Based on our resolution of Patrusky's second issue, we need not address his first and third issues pertaining to the trial court granting Kenneth's second traditional motion for summary judgment on the same claims. *See* TEX. R. APP. P. 47.1.

## Conclusion

We conclude the trial court did not err by granting Marilyn's first amended no-evidence motion for summary judgment on Patrusky's fraud by nondisclosure and common law fraud claims or Kenneth's third no-evidence motion for summary judgment on Patrusky's breach of fiduciary duty, negligent misrepresentation, fraud by nondisclosure, and common law fraud claims. We conclude the trial court erred by granting Kenneth's third no-evidence motion for summary judgment on Patrusky's negligence claim because Patrusky did not have standing to assert that claim against Kenneth. We vacate the trial court's judgment as to Patrusky's negligence claim against Kenneth and dismiss that claim for want of jurisdiction. We affirm the trial court's judgment in all other respects. We deny appellees' motion, in their brief, for sanctions under rule of appellate procedure 45.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

140175F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERNARD PATRUSKY, Appellant

No. 05-14-00175-CV      V.

KENNETH BLOOMBERG AND
MARILYN BLOOMBERG, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-11-14821.
Opinion delivered by Justice Fillmore,
Justices Myers and Evans participating.

In accordance with this Court's opinion of this date, we **VACATE** the trial court's judgment as to appellant Bernard Patrusky's claim for negligence against appellee Kenneth Bloomberg and dismiss that claim for lack of jurisdiction. In all other respects, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Kenneth Bloomberg and Marilyn Bloomberg recover their costs of this appeal from appellant Bernard Patrusky.

Judgment entered this 24th day of June, 2015.